UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EBERTO BAUTISTA,<br><br>                       Plaintiff,<br>     v.<br><br>NEVADA DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>                       Defendants. | Case No. 3:18-cv-00194-MMD-WGC<br><br>ORDER |

**I.    SUMMARY**

*Pro se* Plaintiff Eberto Bautista, who is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), brings this action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). (ECF No. 7.) Plaintiff and Defendants have filed cross-motions for summary judgment. (ECF Nos. 59 ("Plaintiff's Motion"), 60 ("Defendants' Motion").) Before the Court is a Report and Recommendation ("R&R") of United States Magistrate William G. Cobb, recommending the Court deny Plaintiff's Motion and grant Defendants' Motion. (ECF No. 78.) Plaintiff filed an objection to the R&R. (ECF No. 81 ("Objection")[1].) Because the Court agrees with Judge Cobb's analysis, the Court will accept the R&R, deny Plaintiff's Motion and grant Defendants' Motion.

**II.    BACKGROUND**

The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center ("LCC"). (ECF No. 7.) Defendants are former NDOC Director

---

[1]Defendants filed a response. (ECF No. 82.) Plaintiff filed a reply (ECF No. 83) without seeking leave of the Court in violation of LR IB 3-2(a). For that reason and because the Court finds that a reply brief is unwarranted, the Court will strike Plaintiff's reply brief.

James Dzurenda, former LCC Warden Renee Baker, LCC Culinary Food Services Manager Maribelle Henry, and Rabbi Yisroel Rosskamm.[2] (ECF No. 6.) Specifically at issue in this action is NDOC's Common Fare/Religious Diet ("Common Fare"), the menu provided to inmates whose "sincere religious/spiritual dietary needs cannot be met by the Master Menu." (ECF No. 60-10 at 2.)

### A.     Plaintiff's Allegations

Plaintiff alleges that he practices Messianic Judaism, but that he was not provided a kosher diet that was prepared and served in a proper kosher setting, and that he was prevented from obtaining items necessary to practice his religion due to his indigent status. (ECF No. 6.) As a result, Plaintiff asserts claims under the First Amendment's Free Exercise Clause, RLUIPA, and the Fourteenth Amendment's Equal Protection Clause.[3] (*Id.*)

Specifically, Plaintiff alleges that he was provided a "one-size fits all" vegetarian diet with the same items served every day, whereas inmates who did not require kosher meals received a variety. (*Id.*) While other inmates received 13 meat servings per month for breakfast, 22 meat servings per month for lunch, and 25 meat servings per month for their evening meals, Plaintiff alleges he received only quinoa, unwashed cabbage, and freezer burned fruit. (*Id.*) Plaintiff further claims the prison hired Rabbi Rosskamm to certify the common fare diet as kosher in order to punish inmates who sought a kosher diet. (*Id.*)

Plaintiff also alleges the conditions of his water dispenser and the kosher food preparation areas and utensils are not adequately supervised or maintained, which allow for cross-contamination. (*Id.*) He claims he must eat on tables cleaned with filthy rags and

---

[2]Current NDOC Director Charles Daniels was substituted for Dzurenda under Federal Rule of Civil Procedure 25(d), insofar as Dzurenda was sued in his official capacity. (ECF No. 45.)

[3]Plaintiff also asserted a claim under the Eighth Amendment, but this was dismissed with prejudice at screening. (ECF No. 6.) Plaintiff made additional arguments that alleged Eighth Amendment violations in his Motion (ECF No. 59), but the Court will not consider these because they were dismissed in the screening order and he did not amend his Complaint.

that his eating area could be contaminated with e-coli and fungus. (*Id.*) Plaintiff further asserts that Defendants fail to post rabbinical health inspection reports in the kosher food preparation area, yet do post health reports in the general culinary area. (*Id.*)

Finally, Plaintiff avers he can only eat cold foods on Shabbat and high holy days, while other inmates receive hot entrees on their holy days. (*Id.*)

Plaintiff identifies two administrative regulations that he argues violate his constitutional rights. The first is Administrative Regulation 810 ("AR 810"), which requires faith groups who require special consumable food for workshop to obtain them for themselves from the canteen, an approved vendor, or an approved religious organization. He claims having grape juice and kosher bread is a central tenet to the Messianic Sabbath, but that because he is an indigent inmate he must rely on NDOC to provide him with the items necessary to practice his faith. The second is Administrative Regulation 814 ("AR 814"), which details the Common Fare policy and procedure. (ECF No. 60-10 at 8.)

**B.     The Summary Judgment Motions**

Plaintiff moved for summary judgment, arguing: (1) the Common Fare diet he was served did not comply with his dietary needs and he was served a primarily vegetarian diet with no dessert while mainline inmates received a significant amount of meat in their meals; (2) AR 814 unconstitutionally allows non-kosher foods to be served to inmates receiving the Common Fare diet; and (3) AR 810 is unconstitutional insofar as it provides that faith based groups who require special consumable foods for worship, such as grape juice, bread, or kosher items, must obtain those items themselves from the canteen, an approved vendor, or approved religious organization. (ECF No. 59 at 20-21.)

Defendants also moved for summary judgment, arguing: (1) the facts call into question the sincerity of Plaintiff's religious beliefs; (2) Defendants have not burdened Plaintiff's religious practice and the Common Fare diet is reasonably related to legitimate penological interests; (3) Defendants are entitled to qualified immunity because the Complaint does not allege what individual action was taken by each Defendant to violate Plaintiff's rights; (4) Plaintiff's equal protection claim does not challenge any particular

3

statute or regulation, he has not established he was treated differently than similarly situated persons, and he has no evidence of discriminatory intent on the part of any Defendants; (5) Plaintiff's RLUIPA claim fails because he cannot demonstrate any burden on his religious practice; and (6) Defendants are entitled to qualified immunity as to all money damages because the formulation of the Common Fare diet and its implementation was completed under rabbinical supervision to ensure compliance with kosher dietary laws. (ECF No. 78 at 5.)

Judge Cobb ultimately found that although the parties had shown a genuine dispute of material fact as to whether Plaintiff's religious beliefs were sincerely held (*id.* at 11), Defendants had not substantially burdened Plaintiff's religious practice (*id.* at 19). Further, Judge Cobb determined that Plaintiff had not demonstrated evidence of discriminatory intent, a requisite element of his equal protection claim. (*Id.* at 26.) Consequently, Judge Cobb recommended denying Plaintiff's Motion and granting Defendants' Motion. (*Id.* at 27.) Plaintiff filed an Objection to the R&R (ECF No. 81), and Defendants responded to the Objection (ECF No. 82.)

**III.   LEGAL STANDARD**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." *Id.* The Court's review is thus de novo because Plaintiff filed his Objection. (ECF No. 81.)

**IV.   DISCUSSION**

As a preliminary matter, Judge Cobb identified several arguments in Plaintiff's Motion which were not included in his Complaint. (ECF No. 78 at 7.) Because "[a] complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations," *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000), Judge Cobb excluded Plaintiff's newly

4

raised arguments.[4] (ECF No. 78 at 7.) Plaintiff objected to this exclusion, but did not explain why, other than that he believed Judge Cobb misapprehended the meaning of kosher as the basis for Plaintiff's allegations. (ECF No. 81 at 3-4.) However, as a matter of procedure, the Court agrees with Judge Cobb that the newly raised arguments should be excluded from the summary judgment analysis. These specific allegations were not present in Plaintiff's Complaint, and Defendants did not have adequate opportunity to address them. Further, the fact that at various times in his pleadings Plaintiff has used 'vegetarian' and 'vegan,' and 'organic' and 'kosher' inconsistently amplifies the potential for confusion and increases the chances that Defendants would be required to address changing arguments. Ultimately, the Court will consider only arguments which were raised in the Complaint and that both parties have had adequate opportunity to conduct discovery on. Therefore, the Court will not consider the newly raised arguments.

Plaintiff's previously raised arguments fall into three categories: First Amendment Free Exercise claims, RLUIPA claims, and Fourteenth Amendment Equal Protection Claims. The Court reviews these arguments in turn as follows.

### A.  Right to Kosher Diet

Plaintiff's claims under the First Amendment and RLUIPA arise from his allegation that he has been denied access to an adequately kosher diet. There are overlapping

---

[4]Specifically, the following issues were excluded from Judge Cobb's analysis: "that his religious rights are being violated because he is not being served a menu consisting of organic fruits, vegetables and meat; that homosexual inmates are preparing his foods; that he should not have to go and pick up his meals on the Sabbath; that inmates who celebrate Passover, who are not receiving the Common Fare diet, are only provided a holiday meal on one day of Passover; [that] Common Fare inmates are deliberately targeted to be removed from Common Fare if they accept mainline food, but if a mainline inmate eats Common Fare food, nothing is done; and [that] requiring him to sign a Common Fare agreement that precludes him from eating mainline, non-kosher meals violates his religious rights." (ECF No. 78 at 7-8.)

Additionally, Plaintiff raised a new theory that the Common Fare agreement he signed in order to receive kosher meals somehow burdened his religious exercise. (ECF No. 67-2 at 2.) In his Complaint, Plaintiff never alleged that the Common Fare agreement in any way interfered with his religious rights, but only mentioned he received a notice of charges for eating non-kosher items. (ECF No. 7 at 5.) The Court will not permit a new theory of recovery at summary judgment.

requirements to successfully demonstrate a First Amendment free exercise claim and an RLUIPA violation. Both claims require that Plaintiff demonstrate Defendants substantially burdened his sincerely held religious belief. Because Plaintiff has failed to provide sufficient evidence to support his allegation that Defendants' practices or regulations substantially burdened his right to a kosher diet, the Court will deny Plaintiff's Motion and grant Defendants' Motion as to the First Amendment and RLUIPA claims.

### 1. First Amendment Free Exercise

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment … prohibits government from making a law prohibiting the free exercise [of religion]." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citations and quotation marks omitted). "The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbit*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008).

To implicate the Free Exercise Clause, a prisoner must first establish his belief is both sincerely held and rooted in religion. *See Shakur*, 514 F.3d at 884-85. Then, a person asserting a free exercise claim must show "that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015) (citation omitted). "A substantial burden … place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citation and internal quotation marks omitted).

"[A]lleged infringements of a prisoners' free exercise rights are judged under a reasonableness test [that is] less restrictive than that ordinarily applied to alleged infringement of fundamental constitutional rights." *Id.* (citing *O'Lone*, 482 U.S. at 349). "The

6

1 challenged conduct is valid if it is reasonably related to legitimate penological interests."
2 *Id.* (quotation marks omitted, citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The
3 'reasonableness' factors outlined in *Turner* are: (1) "there must be a 'valid, rational
4 connection' between the prison regulation and the legitimate governmental interest put
5 forward to justify it"; (2) "whether there are alternative means of exercising the right that
6 remain open to prison inmates"; (3) "the impact accommodation of the asserted
7 constitutional right will have on guards and other inmates, and on the allocation of prison
8 resources generally"; and (4) the "absence of ready alternatives" and "the existence of
9 obvious, easy alternatives." *Turner*, 482 U.S. at 89-91; *see also O'Lone*, 482 U.S. at 349.

### 2. RLUIPA

Section 3 of RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

"The Supreme Court has recognized RULIPA as . . . [a] 'congressional effort[ ] to accord religious exercise heightened protection from government-imposed burdens[.]" *Greene v. Solano Cty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005)). Nevertheless, "[c]ourts are expected to apply RLUIPA's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security, and discipline, consistent with consideration of costs and limited resources." *Hartmann*, 707 F.3d at 1124 (internal quotation marks and citation omitted).

"Under RLUIPA, the challenging party bears the initial burden of proving that his religious exercise is grounded in a sincerely held religious belief . . ., and that the government's action substantially burdens his religious exercise." *Holt v. Hobbs*, 135 S.Ct. 853, 857 (2015) (citations omitted). A substantial burden "must impose a significantly great

7

restriction or onus upon such exercise." *Greene*, 513 F.3d at 987 (quoting *San Jose Christian Coll v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)).

If the plaintiff makes a showing of a substantial burden on the exercise of his religion, the court's analysis then turns to whether the defendant has established that burden furthers "a compelling interest," and does so "by the least restrictive means." 42 U.S.C. § 2000cc-1(a), (b); *Holt*, 135 S.Ct. at 857 (citation omitted).

### 3. Analysis

To successfully allege claims for violations of either the First Amendment's free exercise clause or RLUIPA, Plaintiff must demonstrate that (1) he had a sincerely held religious belief, and (2) Defendants substantially burdened his exercise of that belief. Judge Cobb found that there is a genuine dispute of material fact as to whether Plaintiff's religious belief is sincerely held. Plaintiff argues that as a practitioner of Messianic Judaism, he must keep the dietary laws set forth in Leviticus, chapter 11, which require him to eat kosher, unprocessed meats and clean fruits and vegetables. (ECF No. 59-1 at 3-9.) To support the sincerity of his beliefs, Plaintiff testifies that he first attended the Messianic Judaism group at LCC in 2015 or 2016, that he is listed on NDOC's faith declaration form as being a practitioner of Messianic Judaism, and that he placed a request to receive the Common Fare diet in April of 2016. (*Id.* at 1-3.) Defendants counter that Plaintiff's beliefs are not sincerely held because he has purchased items from the canteen that are not kosher, including pork rinds, shrimp ramen, and Cheetos. (ECF No. 60-3.) Defendants further point to several occasions when Plaintiff took mainline, non-kosher meals in violation of his Common Fare agreement. (ECF Nos. 60-5, 60-7, 60-8, 60-9.) Plaintiff responded to these allegations by stating that his non-kosher canteen purchases were for his cellmate, and that he only took mainline meals because he was tired of the repetitious Common Fare meals that served inadequate meat and did not have desserts. (ECF no. 67-2 at 17, 21.) The Court agrees with Judge Cobb—there is a genuine dispute of material fact as to whether Plaintiff's deviations from the Common Fare plan

and canteen purchases indicate that his religious belief that he needs a kosher diet is sincerely held.

Because there is a question as to whether Plaintiff's religious belief is sincerely held, both Plaintiff's and Defendants' Motion turn on whether Plaintiff's religious beliefs were substantially burdened. Plaintiff makes three cognizable arguments that Defendants substantially burdened his religious practice: (1) Defendants did not provide Plaintiff with an adequate kosher diet; (2) Plaintiff's meals were not prepared in an adequate kosher setting; and (3) Plaintiff had to obtain group worship consumables, such as grape juice and kosher bread, from the canteen, an approved vendor, or an approved religious organization. Defendants counter that Plaintiff has provided no evidence that the Common Fare diet is not kosher, and provides evidence that the Common Fare plan is certified as kosher compliant. Because the Court finds that Plaintiff has not provided adequate evidence to support his claim that he was served non-kosher food, the Court will deny Plaintiff's Motion and grant Defendants' Motion.

Plaintiff has failed to demonstrate beyond mere conjecture that his religious right to a kosher diet was substantially burdened.

### a. Sufficiency of Diet

Plaintiff asserts that the Common Fare diet is insufficient because it did not contain adequate amounts of meat. But other courts in this circuit have found that receiving different meat options or even less meat was not a substantial burden on religious exercise. *See Shoemaker v. Williams*, No. CV 10-0826-JO, 2013 WL 528306, at *2 (D. Or. Feb. 11, 2013) (rejecting prisoner's claim that a meat-free diet infringed his religious rights); *see also Sprouse v. Ryan*, 346 F. Supp. 3d 1347, 1359 (D. Ariz. 2017) (finding no substantial burden when prison served kosher meal without 100% beef); *Fonseca v. Cal. Dep't of Corr. and Rehab.*, No. 14-cv-787-LAB (BLM), 2015 WL 4172194, at *4 (S.D. Cal. July 10, 2015) (finding that serving fish more often than beef was not a substantial burden). Plaintiff makes no claim that his religion requires him to eat a certain amount of meat. The requirements of his religion are instead that if Defendants serve him meat, that it must be

9

kosher compliant. Not having as much meat as he would like does not rise to the level of a substantial burden on Plaintiff's religion.

Plaintiff next argues that because some produce served on the Common Fare menu does not bear the kosher symbol, it is not kosher. Defendants offer the declaration of Rabbi Rosskamm, who is the rabbinical administrator for the kosher certification agency NDOC used to certify its Common Fare program. (ECF No. 60-17.) Rosskamm testifies that the Common Fare menu and preparation methods were both kosher. (*Id.* at 6.) In response to Plaintiff's argument that the fruits and vegetables he receives are not kosher because they do not have the kosher symbol on their packaging (ECF No. 67-2 at 20), Rosskamm testifies that raw fresh fruits and vegetables are universally accepted as kosher, even without certification, and that there is no requirement that they cannot be frozen. (ECF No. 60-11 at 6.)

### b. Preparation and Storage

Plaintiff further argues Defendants' storage and preparation methods are not kosher, thus jeopardizing his access to otherwise kosher foods. In support of this assertion, Plaintiff testifies that the water dispensers were not properly cleaned, the pot used to rinse the rags used to wipe down tables was not changed sufficiently, and that porters were instructed to begin sweeping as soon as the last tray was served, which kicked up dust while people were still eating. (ECF No. 59-1 at 13.) Plaintiff also argues that the vegetables are "sometimes dirty with cracks in them and unusual discoloration" and they "appear to be unwashed." (*Id.* at 15.)

As to Plaintiff's claim that vegetables were unwashed and improperly stored, Rosskamm further testifies there is no requirement that naturally kosher fruits and vegetables be stored in a separate cooler. (*Id.*) Because Defendants keep their only processed, kosher-certified produce—shredded lettuce and cabbage—in a separate box in the produce room (ECF No. 67-1 at 128), there is no evidence that any of Defendants' food storage or preparation is not kosher compliant. Moreover, Plaintiff's claim that his

vegetables appear discolored or cracked does not adequately allege that they were not washed or otherwise appropriately prepared.

Finally, Plaintiff's objection states that Judge Cobb "misapprehended" his argument that the Common Fare meals were not being prepared in an adequately kosher setting. (ECF No. 81 at 5.) Plaintiff argues that "although not stating it bluntly, [he] was referring to the people 'preparing' the food," complaining that a person who is a "homosexual" will never be "clean enough" to prepare a kosher meal until they "stop practicing homosexuality." (*Id.*) As stated above, these arguments were not raised in Plaintiff's Complaint and the Court need not consider them here. But even if the Court were to construe Plaintiff's original allegations, which he claims always meant he objected to homosexual people preparing his food, even though he was "not stating it bluntly," the Court will not permit this argument to continue. Assuming that Plaintiff's religious beliefs are sincerely held, though even that is factually in dispute, Plaintiff offers no specific evidence to support his claims about the identity of the people preparing his food. *See, e.g.*, *Henderson v. Muniz*, No. 14-cv-01857-JST, 2017 WL 6885394, at *11 (N.D. Cal. Nov. 28, 2017) (finding no triable issue of fact when Muslim plaintiffs complained that non-Muslim food handlers had prepared their Ramadan meals but did not provide anything more than conclusory allegations); *see also Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) ("[C]onclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient" to support or defend a motion for summary judgment.). But even if Plaintiff had raised these claims sufficiently in his Complaint—which he did not— and even if he articulated some personal knowledge in his affidavit that the people preparing his food had a sexual orientation which he found unacceptable—which he has not—Plaintiff still would have to demonstrate that his faith mandates that the sexual orientation of the preparer of his food is in any way relevant to its status as kosher. Plaintiff has failed to so articulate, and the Court will not draw such a conclusion here.

///

///

11

Because Plaintiff does not offer sufficient evidence that Defendants' preparation and storage practices are not kosher compliant, this allegation does not support his claim that Defendants have substantially burdened his religious exercise.

### c.     Availability of Required Religious Materials

Plaintiff finally claims that his religious exercise has been substantially burdened because Defendants do not provide him with matzah and grape juice for his Shabbat service and for the high holy days. (ECF No. 59-1 at 10.) Defendants respond that AR 810 permits Plaintiff to purchase items needed from the canteen or from approved vendors, and that Plaintiff's prior canteen purchases indicate Plaintiff's ability to purchase these items. Alternatively, Plaintiff may obtain the items from an outside vendor or sponsor, with approval from the warden. (ECF No. 59-2 at 46.) Plaintiff does not explain how his indigency has prevented him from purchasing matzah and grape juice, yet allowed him to purchase shrimp ramen and Cheetos. Further, even assuming a reason why he was unable to purchase these items from the canteen, Plaintiff never states that he has attempted to obtain these items from an outside source but was unsuccessful. Accordingly, Plaintiff has not provided adequate evidence that AR 810 has substantially burdened his ability to practice his religion.

The Court need not reach the analysis under the First Amendment of whether there was a legitimate government purpose, or under RLUIPA of whether there was a compelling government interest, because Plaintiff has not adequately alleged evidence sufficient to support the conclusion that his beliefs were substantially burdened. Accordingly, the Court will deny Plaintiff's Motion and will grant Defendants' Motion as to the First Amendment and RLUIPA claims.

### B.     Fourteenth Amendment Equal Protection

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Hartmann*, 707 F.3d at 1123 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "This does not mean, however, that all prisoners must receive identical treatment and resources." *Id.* (citations omitted). The plaintiff must establish that

"the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Id.* (citations and internal quotation marks omitted). Inmates must be given "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322 (1972).

Plaintiff's equal protection argument stems from his allegation that the prison serves hot meals to mainline inmates on their holy days, while the Common Fare meals are served cold. Plaintiff further points to the higher number of mainline meals that contain meat, while the Common Fare meals are largely vegetarian. Defendants argue that Plaintiff does not identify any statute or regulation that purportedly violates the Equal Protection Clause, he has not established that he is treated differently from other similarly situated inmates, and he has offered no evidence of discriminatory intent. (ECF No. 60 at 10.)

Plaintiff has not produced any evidence that Defendants intended to discriminate against him in serving the Shabbat and high holy day meals cold. Indeed, Defendants have offered evidence that the meals are served cold to remain in compliance with kosher standards that no electricity be used in connection with the preparation of the meals. (ECF Nos. 60-11 at 5, 60-16 at 4.) Because Plaintiff has not offered any evidence at all that any individual named Defendant had any intent to discriminate against Plaintiff, the Court finds that Plaintiff has not offered sufficient evidence that Defendants' serving cold meals for Shabbat and the high holy days violates his right to equal protection under the law.

Similarly, Plaintiff fails to allege that the Common Fare's lack of meat evinces a discriminatory intent. To the contrary, Defendants offer evidence that the Common Fare program was developed to accommodate inmates who dietary needs could not be met through the mainline program. (ECF No. 59-2 at 17, ECF No. 60-10 at 2.) The Court agrees with Judge Cobb that with the demonstrated evidence, Plaintiff has failed to allege a claim that his equal protection rights were violated. Accordingly, the Court will deny Plaintiff's Motion and will grant Defendant's Motion.

## V.     CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Plaintiff's objection (ECF No. 81) to the Report and Recommendation of U.S. Magistrate Judge William G. Cobb is overruled. The Report and Recommendation of U.S. Magistrate Judge William G. Cobb (ECF No. 78) is accepted entirely.

It is further ordered that Plaintiff's motion for summary judgment (ECF No. 59) is denied.

It is further ordered that Defendants' motion for summary judgment (ECF No. 60) is granted.

It is further ordered that Plaintiff's reply in support of his objection (ECF No. 83) be stricken.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 4th Day of March 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE