AARON D. FORD
  Attorney General
DOUGLAS R. RANDS, Bar No. 3572
  Senior Deputy Attorney General
State of Nevada
Bureau of Litigation
Public Safety Division
100 N. Carson Street
Carson City, Nevada 89701-4717
Tel: (775) 684-1150
E-mail: drands@ag.nv.gov

*Attorneys for Defendants*
*Maribelle Henry, Renee Baker,*
*James Dzurenda and Yisroel Rosskamm*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| EBERTO BAUTISTA,<br><br>          Plaintiff,<br><br>vs.<br><br>NEVADA DEPARTMENT OF CORRECTIONS, et al.,<br><br>          Defendants. | Case No. 3:18-cv-00194-MMD-CSD<br><br>**(PROPOSED)**<br>**JOINT PRETRIAL ORDER** |

Following pretrial proceedings in this case,

IT IS ORDERED:

I.    **NATURE OF ACTION AND CONTENTIONS OF THE PARTIES**

    A.    **NATURE OF ACTION**

This is a pro se prisoner civil rights action brought by inmate Eberto Bautista (Bautista), asserting claims arising under 42 U.S.C. § 1983. Bautista alleges violation of his First Amendment free exercise and RLUIPA rights, and Fourteenth Amendment Equal Protection Clause rights. (ECF No. 7). Bautista claims that Maribelle Henry, Food Services Manager (Retired), Renee Baker, Warden (Retired) and James Dzurenda, Director (Former), violated his rights by interfering and failing to provide him with an adequate kosher diet. *Id.* He also makes similar claims against Rabbi Yisroel Rosskamm. *Id.* This Court's Screening Order (ECF No. 6) allowed Bautista to proceed against these Defendants on these two claims.

1

Bautista filed his Motion for Summary Judgment on April 24, 2020. (ECF No. 59). Defendants filed their Motion for Summary Judgment on April 27, 2020. (ECF No. 60). The Court granted the Defendants' Motion for Summary Judgment on March 4, 2021. (ECF No. 81). Bautista appealed the decision to the Ninth Circuit Court of Appeals. The Ninth Circuit reversed and remanded Bautista's First Amendment and RLUIPA claims. This Court, then, indicated that the order granting the Motion for Summary Judgment is vacated in part. (ECF No. 95).

The Ninth Circuit Memorandum states "however, the District Court erred in granting summary judgment to Defendants on Bautista's First Amendment and RLUIPA claims arising from the Common Fare Diet and its preparation. Although the Defendants provided some evidence that the diet and its preparation methods satisfied the Kosher dietary needs of Orthodox Jews, the record showed that Bautista was a Messianic Jew, and there was no evidence that his dietary needs were identical to those of Orthodox Jews. Moreover, the District Court erred in refusing to consider much of Bautista's proffered evidence detailing his religious dietary needs. That evidence appropriately explicated the factual basis of his claims including his understanding of "Kosher" and his specific objections to the food preparation. Because there was a genuine dispute of material facts regarding the nature of Bautista's dietary needs and whether those had been substantially burdened, the District Court erred in entering summary judgment as to those claims." *Id.* Memorandum, at p.4, No. 21-15476.

Therefore, this matter is proceeding to trial

**B.     CONTENTIONS OF THE PARTIES**

**1.     Bautista's Contentions**

Count I alleges that Defendants Rosskamm (Rabbi); Henry (Food Manager at LCC); Baker (Warden at LCC0; and Dzurenda (Director of NDOC) were deliberately indifferent to Bautista's dietary need for a religious diet, that was adequately supervised in a Kosher setting; that Defendants served a vegetarian diet to all inmates requesting a religious dietary need, and ultimately, that the religious diet served violated Bautista's equal treatment under the Equal Protection of the Law pursuant to the Fourteenth Amendment, due to mainline inmates who are religious but not requiring a religious diet, being fed with a more diverse and nutritionally adequate diet on mainline, while religious dietary needs were fed repetitious religious meals without any variety, and punished with cold meals designed to

encourage inmates to quit the needed religious meals, violating Bautista's First and Fourteenth Amendment Rights to the U.S. Constitution, Religious Land Use and Institutionalized Persons Act (RLUIPA) 42 U.S.C. § 2000cc et seq., and the Eighth Amendment.

Count II alleges that Administrative Regulation (AR) 814 is a policy or custom used by the NDOC that permits UnKosher/Scripturally unqualified foods to be served to inmates who request a scripturally Kosher religious diet. That AR 814 violates the First, Eighth, Fourteenth Amendments to the U.S. Constitution; Nevada Revised Statutes (NRS) 209.381; 209.382; 209.131; and 42 U.S.C. § 2000cc et seq. (RLUIPA).

### 2. Defendants' Contentions

Defendants contend that the evidence does not support Bautista's allegations. Defendants incorporate any Affirmative Defenses from the Answer as it pertains to the Defendants. Defendants deny that Bautista's constitutional rights have been violated.

### C. RELIEF SOUGHT

Bautista seeks declaratory, compensatory, and punitive damages, as well as injunctive relief

## II. STATEMENT OF JURISDICTION

This is a civil action commenced under 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III. UNCONTESTED FACTS ADMITTED BY THE PARTIES WHICH REQUIRE NO PROOF

1. Mr. Bautista filed a 42 U.S.C. § 1983 Civil Rights Action alleging violations of his First, Eighth and Fourteenth Amendment Rights; RLUIPA 42 U.S. § 2000cc et seq.; and NRS 209.381, NRS 209.382 and NRS 209.131.

2. At all times relevant in the Complaint, Bautista was in the lawful custody of the Nevada Department of Corrections ("NDOC") housed at Lovelock Correctional Center (LCC) (ECF No. 7 at 1).

3. Defendant Renee Baker was formerly employed by the NDOC as a Warden.

4. Defendant James Dzurenda was formerly employed by the NDOC as the Director.

5. Defendant Maribelle Henry was formerly employed by the NDOC as the Culinary Director for LCC.

6. Defendant Yisroel Rosskamm was formerly contracted with the NDOC as a kosher consultant.

7. Bautista alleges he was denied a scripturally Kosher diet that is based upon being organically grown meats, vegetables, fruits and drinks.

8. NDOC provides a common fare diet for all requests for a religious diet (ECF No. 59-7) AR 814.

9. Mainstream diets at LCC contain more servings of meat and dessert portions (ECF No. 59-4 & 5)

10. That the mainstream diet and common fare diet at LCC do not comfort with a Bautista's claim for a scripturally clean diet, organically raised meats, vegetables, fruits, and drinks (ECF No. 59-1) at pp 3-13, No. 9.

11. That the prison canteen does identify items that are Kosher for Orthodox Jews, but does not identify organic foods as required by scripture for Messianics as alleged by Bautista.

12. The common fare menu at LCC is certified Kosher, by a Rabbi. (Declaration of Rosskamm).

13. Bautista is not currently on the common fare diet, as he was removed for repeatedly violating his common fare agreement (Exhibits E-H).

14. On December 25. 2016 Bautista violated AR 814 by taking a main line meal. Exhibit E. This violated his common fare agreement. (Exhibit F).

15. On November 3, 2017, he violated the AR again by taking a main line meal. (Exhibit G). He was given a second warning. Bautista signed for that notice on November 9, 2017.

16. On June 13, 2018, he received a third warning for taking a main line meal. (Exhibit H). Again, this violated his common fare agreement. After the third warning, his religious diet was suspended, pending an appeal. (Exhibit I).

17. That it is Plaintiff's sincerely held religious belief pursuant to scripture that homosexual behavior is an abomination to be utterly loathed and hated for it is accursed and we are not to allow it into our house. (ECF No. 59-1) at pp 8-9 (J-1).

///

18. Bautista believes that he needs scripturally "Kosher" foods grown organically to cleanse his body ss proscribed by scripture. (ECF No. 59-1) at pp 4-7 (d-i).

19. Bautista believes that if he is not able to cleanse his body by eating scripturally clean foods (Kosher) he will not be allowed to receive eternal life. (ECF No. 59-1) at p 8 (J).

20. Bautista also believes the command not to prepare any foods on the Shabbat. All food preparation is to be completed on the Sixth Day – Friday, to be eaten on the Shabbat. (ECF No. 59-1) at p 12 (g).

## IV. FACTS UNADMITTED THAT WILL NOT BE CONTESTED

The following facts, though not admitted, will not be contested at trial by evidence to the contrary: NONE

## V. CONTESTED ISSUES OF FACT TO BE TRIED AND DETERMINED UPON TRIAL

### A. PLAINTIFF'S CONTESTED FACTS

*See* Complaint.

### B. DEFENDANTS' CONTESTED FACTS

1. Whether Bautista has met his burden of producing evidence supporting the facts set forth above, i.e., whether he can prove that the individual defendants violated his First Amendment, and RLUIPA rights?

2. Whether any form of damages are available to Bautista for any alleged failures?

## VI. CONTESTED ISSUES OF LAW TO BE TRIED AND DETERMINED UPON TRIAL

### A. PLAINTIFF

1. Does AR 814.02(7) allow prison inmates to be served fresh fruit and vegetables that are not Kosher?

2. Does AR 814.04(5)(A) allow prison inmates to be served non-Kosher drinks-beverages?

3. Is the common fare diet of AR 814 providing Bautista with a religious diet that he needs to cleanse his body and maintain his health?

4. Does the "Common Fare Acknowledgment and Agreement" of AR 814 (DOC 3058) Attachment 1, require an inmate to choose between waiving his constitutional right to receive a

///

"religious diet" by signing an agreement to be removed for doing acts that the NDOC believes are insincerity of an inmate's professed belief.

5. Did Defendant Dzurenda violate Bautista's First, Fourteenth and Eighth Amendment Rights by adopting Administrative Regulation 814 which allowed Bautista to receive a Kosher diet as determined by a Rabbi – Yisrael Rosskamm, but denied a Kosher scripturally-clean diet?

6. Was Defendant Baker's denial of a scripturally clean diet in conformity with AR 814?

7. Was Defendant Henry's denial of a scripturally clean diet also based on AR 814?

8. Did Defendant Dzurenda violate the Religious Land Use and Institutionalized Persons Act (RLUIPA) 42 USC § 2000cc et seq., when he adopted AR 814?

9. Does AR 814 violate the provisions of the First Amendment?

10. Should Defendants Dzurenda, Baker and Henry have known that the refusal to provide Bautista with a scripturally-Kosher-clean food diet violated Bautista's First, Eighth and Fourteenth Amendment Rights?

1. First and Fourteenth Amendment Rights

Only beliefs rooted in religion are protected by the Free Exercise Clause, which by its terms, gives special protection to the exercise of religion. The determination of what is a "religious" belief of practice is more often than not a difficult and delicate task … However, the resolution of that question is not to turn upon a juridical perception or the particular belief or practice in question, religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment Protections. *See,* Thomas v. Review Board Ind. Employment Sec. Div., 450 U.S. 707, 713-14 (1981).

There are particular liberties that have constitutional status in their own right, such as freedom of speech and free exercise of religion, whose deprivation by the state on a class wide as well as an individual basis may violate the due process clause of the Fourteenth Amendment. *See,* Hewitt v. Helms, 459 U.S. 460, 485 n.8 (1983).

The Free Exercise Clause of the First Amendment, which applies to the states through the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 303 (1940)

///

2. <u>Eighth Amendment</u>

The basic concept underlying the Eighth Amendment is nothing less than the dignity of man.

To incarcerate, society takes from prisoners the means to provide for their own needs. Prisoners are dependent on the state for food, clothing and necessary medical care. *See,* <u>Brown v. Rata,</u> 179 L.Ed. 2d 969, 987 n.2, 563 U.S. ___, ___ (2011).

Food then is a necessity of life which is required to sustain life.

3. <u>Religious Diet</u>

Inmates have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion. *See,* <u>McElyeau v. Babbit,</u> 833 F.2d 196, 198-99 (9th Cir. 1987).

The duration of time over which a prisoner sought to have his dietary request accommodated, and the fact that he sought that accommodation primarily as a religious group member, clearly demonstrates that his beliefs were sincerely held. *See,* <u>Koger v. Bryan,</u> 523 F.3d 789, 797-98 (7th Cir. 2008).

Here, Bautista has been requesting a scripturally Kosher-clean diet since 2018. For four (4) years, spent $350 for a filing fee and $505 for an appellate filing fee. It can be said that Bautista is sincere.

4. <u>Homosexual Food Preparers</u>

Bautista has cited in chapter and verse in the scriptures in his Affidavit (ECF No. 59-1) why it is forbidden to have homosexuals prepare food for him; that only organic meats, fruits, vegetables and drinks are to be consumed (organic means non-chemical fertilizers and no drugs used on meat animals-birds-fish); and meat cannot be processed so he can see where the fat is and not, because we are not to eat fat or blood.

Homosexual behavior is an abomination to Yahweh. Leviticus 18:22 "And do not lie with a male as with a woman, it is an abomination."

Deuteronomy 7:26 instructs us: "And do not bring an abomination into your home, lest you be accursed like it. Utterly loathe it and utterly hate it, for it is accursed."

///

If it cannot come into our house, it cannot fix our food. Our body is a house for the Holy Spirit [Ruach Ha' Qodesh]. 1 Corinthians 6:19 "Or do you not know that your body is the Mishkan [temple] of the Ruach Ha' Qodesh who is in you, which you have from Elohim, and you are not your own."

Fortifying that we do not eat foods that are prepared by homosexuals.

All of the foods served by the NDOC are unclean and all the commissary foods too. But Bautista eats those foods to maintain life, this alternative being to starve himself to death.

It is well established since 2007 that government action that places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego sincerely held religious beliefs or to engage in conduct that violates those beliefs. See, Jones v. Williams, 791 F. 3d 1023, 1033 (9th Cir. 2015) (citing Guru Nanak Sikll Soc'y, 456 F.3d at 988. "Requiring a believer to defile himself by doing something that is completely forbidden by his religion is different from (and more serious than) curtailing various ways of expressing beliefs for which alternatives are available.") Which is the case at hand. Bautista is forced to eat unclean foods, the culinary refuses to not hire homosexuals to prepare religious diet, forcing Bautista to defile himself whether he is on the so-called religious diet-common fare, or eating mainline foods.

5.  Common Fare Diet Agreement

Defendants claim that Bautista's eating of Orthodox Judaism's unclean foods indicates he is insincere, and that the purchase of pork rinds and shrimp ramen noodles, another. One court has held that, "The fact that a person does not adhere steadfastly to every tenet of his faith does not mark him as insincere. Some religions place unrealistic demands on their adherents; others cater especially to the weak of will. It would be bizarre for prisons to undertake in effect to promote strict Orthodoxy by forfeiting the religious rights of any inmate observed backsliding, thus placing guards and fellow inmates in the role of religious police." See, Reed v. Faulkner, 842 F.2d 960, 963 (7th Cir. 1988) (quoting Tererud v. Burns, 522 F.2d 359, 360 (8th Cir. 1975).

The Common Fare Diet Agreement does exactly that, it kicks you off your religious diet if you do anything, or eat anything, or give food away, then you lose your religious diet.

///

///

6.  RLUIPA Standard

Bautista requests the jury to determine if Defendants Dzurenda, Baker, and Henry violated his RLUIPA rights pursuant to 42 U.S.C. §2000cc, et seq.

RLUIPA requires "strict scrutiny" under that form of review. The government bears the burden of proving both that its regulations serve a compelling interest and that its regulations are "narrowly tailored." See, Mast v. Fillmore County, 141 S.Ct. 2430, 2432 (2021).

In Burwell v. Hobby Lobby Stores, Inc., 189 L.Ed 2d 675, 710 n.21 (2014) holds "We do not doubt that cost may be an important factor in the least-restrictive-means analysis, but both the RFRA and its sister statute, RLUIPA, may in some circumstances require the government to expend additional funds to accommodate citizens' religious beliefs. Cf §2000cc – 3(c) (RLUIPA: "This chapter may require a government to incur expenses in its own operations to avoid imposing a substantially burden on religious exercise.").

Since inmates are totally dependent upon the state to provide them with food to avoid violating the Eighth Amendment, Brown v. Plata, *supra*, 179 L.Ed at 987 n.2; and prisoners are entitled to sustenance to sustain them in good health that satisfies the dietary laws of their religion, McElyea v. Babbit, 833 F.2d at 198-99. Then the state has no reason to deny Bautista an organic diet of non-processed meats-without chemicals or drugs – organic meats, birds, fish; organic fruits, vegetables and drinks. Do the violations warrant damages.

B.  **DEFENDANTS**

1.  Did Defendants individually violate Bautista's constitutional rights?
2.  Did Mr. Bautista prove the elements of a violation of his First Amendment or RLUIPA rights?

"Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." Bell v. Wolfish, 441 U.S. 520, 545 (1979). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). While prisoners retain their First Amendment right to free exercise of religion, it is well recognized that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and

9

rights, a retraction justified by the considerations underlying our penal system." *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008) (internal quotation marks and citations omitted). A prisoner's right to free exercise of his or her religion is necessarily limited by incarceration, and may be curtailed to achieve legitimate correctional goals or to maintain prison security. *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam). To implicate the Free Exercise Clause, a belief must be "sincerely held" and "rooted in religious belief." See *Shakur*, 514 F.3d at 885 (holding that the sincerity test set forth in *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994), and *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981), determines the applicability of the Free Exercise Clause).

"[T]o merit protection under the free exercise clause of the First Amendment . . . [a] religious claim . . . must satisfy two basic criteria." *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981). "First, the claimant's proffered belief must be sincerely held[.]" *Id*. Second, "the claim must be rooted in religious belief, not in 'purely secular' philosophical concerns." *Id*. Further, in order to establish a First Amendment violation, a prisoner must demonstrate that defendants have burdened the practice of his religion without any justification reasonably related to legitimate penological interests. See *Freeman v. Arpaio*, 125 F.3d 732 at 737 (9th Cir. 1997), abrogated on other grounds by *Shakur*, 514 F.3d at 884 (citing *Turner v. Safely*, 482 U.S. 78, 89 (1987)).

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Shakur*, 514 F.3d at 883-84 (quoting *Turner*, 482 U.S. at 89). Under *Turner*, the court must balance four factors in determining whether a prison regulation is reasonably related to legitimate penological interests. The first factor requires that, "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89. Second, the court must determine whether there are "alternative means of exercising the right that remain open to prison inmates." *Id*. at 90. Third, the court must consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id*. Fourth, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id*.

Bautista brings his claim under RLUIPA, 42 U.S.C. § 2000cc et seq., which provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.
>
> 42 U.S.C. § 2000cc-1(a).

"Religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).

To establish a RLUIPA violation, the plaintiff bears the initial burden to prove that the defendants' conduct places a "substantial burden" on his "religious exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). Once the plaintiff establishes a substantial burden, defendants must prove that the burden both furthers a compelling governmental interest and is the least restrictive means of achieving that interest. *Id.* at 995. RLUIPA is to be construed broadly in favor of the inmate. See 42 U.S.C. § 2000cc-3(g) ("This chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution").

Although RLUIPA does not define "substantial burden," the Ninth Circuit has stated that a substantial burden is one that is "'oppressive' to a 'significantly great' extent" and "a 'substantial burden on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier*, 418 F.3d at 995 (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). The burden need not concern a religious practice that is compelled by, or central to, a system of religious belief, see 2000cc-5(7)(A); however, the burden must be more than an inconvenience. *Navajo Nation v. U.S. Forest Serv.*, 479 F.3d 1024, 1033 (9th Cir. 2007), aff'd en banc, 535 F.3d 1058, 1068 (9th Cir. 2008) (internal quotations and citations omitted). A burden is substantial under RLUIPA when the state, "denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008) (quoting *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 1981) (internal quotations omitted).

///

///

## VII. EXHIBITS

### A. STIPULATED EXHIBITS AS TO AUTHENTICITY AND ADMISSIBILITY

1. Administrative Regulation 814.

### B. STIPULATED EXHIBITS AS TO AUTHENTICITY BUT NOT ADMISSIBILITY

None.

### C. PLAINTIFF'S EXHIBITS SUBJECT TO OBJECTIONS

1. Plaintiff's Civil Rights Complaint - ECF No. 1-1
2. Declaration of Plaintiff Eberto Bautista – ECF No. 59-1
3. DOC 3050 – Common Fare Agreement, Exhibit #1 – ECF No. 59-1
4. DOC 3059 – Religious/Dietary Accommodation Challenge Form, Exhibit 2 – ECF No. 59-1
5. NDOC Common Fare Menu, Exhibit #3 – ECF No. 59-1
6. NDOC Mainline Menu, Exhibit 4 – ECF No. 59-1
7. Culinary Menu, Exhibit #5 – ECF No. 59-1
8. NDOC Administrative Regulation (AR) 814 effective date 06/17/2012, Exhibit #6 – ECF No. 59-1
9. NDOC Administrative Regulation (AR) 810, effective date 11/16/2016, Exhibit #7 – ECF No. 59-1
10. NDOC Administrative Regulation (AR) 740, effective date 03/17/2017, Exhibit #8 – ECF No. 59-1
11. Defendant Dzurenda's Response to Plaintiff's Request for Admissions [Set Two], Exhibit #9 – ECF No. 59-1
12. Defendant Baker's Response to Plaintiff's Interrogatories [Set One], Exhibit #10 – ECF No. 59-1
13. Defendant Rosskamm's Response to Plaintiff's Request for Admissions [Set One], Exhibit #11 – ECF No. 59-1
14. Defendant Henry's Response to Plaintiff's Interrogatories [Set One], Exhibit #12 – ECF No. 59-1

D. **DEFENDANTS' EXHIBITS SUBJECT TO OBJECTIONS**
1. Plaintiff's Movement History Report;
2. Plaintiff's housing history report;
3. Plaintiff's Grievance file, including all relevant grievances;
4. Certified Judgment(s) of Conviction of Plaintiff for underlying offense (only if needed for impeachment);
5. Plaintiff's Institutional File ("I-File");
6. Common Fare Menus (Henry Response to RFP 001-058)
7. Declaration of James Stogner Exhibit A ECF No. 60
8. Base Menu Spreadsheet – Dated 12/2/2017 thru 12/15/2017 Exhibit B ECF No. 60
9. Inmate Order History for 1/1/2017 thru 2/21/2019 Exhibit C ECF No. 60
10. Suggested 2nd Level Grievance Response - #2006-30-48819 Exhibit D ECF No. 60
11. Notice of Dietary Accommodation Challenge – Dated 12/26/2016 Exhibit E ECF No. 60
12. Common Fate Acknowledgement and Agreement Exhibit F ECF No. 60
13. Notice of Dietary Accommodation Challenge – Dated 11/4/2017 Exhibit G ECF No. 60
14. Notice of Dietary Accommodation Challenge – Dated 6/13/2018 Exhibit H ECF No. 60
15. Religious/Dietary Accommodation Challenge Form – Dated 6/18/2018 Exhibit I ECF No. 60
16. Plaintiff's Case Notes as maintained on the NDOC NOTIS system from 2014 to Present.
17. All prison logs, registers, documents, or other form of data pertaining to any and all of Plaintiff's claims.
18. Any and all other exhibits that may support the statements of fact and law cited herein and to rebut Plaintiff's statements, claims, and testimony.
19. Any and all other exhibits that rebut witnesses that might be called to respond to claims made by either Plaintiff or any of his proposed witnesses;
20. Declaration of Yisroel Rosskamm

E. **DEPOSITIONS**
1. None.

## VIII. WITNESSES

### A. PLAINTIFF'S WITNESSES:

Plaintiff wishes to reserve the right to call the following persons:

1. Plaintiff Eberto Bautista
2. Inmate Carlos Ruiz #94960, Messianic Facilitator at LCC – 2018
3. Inmate Timothy J. Johnson, #23766, Mesianic Facilitator at LCC – 2018
4. NDOC Director James Dzurenda
5. LCC Warden Renee Baker
6. Maribelle Henry – Food Manager, LCC
7. NDOC Religious Diet Advisor – Yisrael Rosskamm
8. All witnesses identified by Defendants, whether or not called to testify at trial.

### B. DEFENDANTS' WITNESSES:

Defendants wish to reserve the right to call the following persons:

1. Plaintiff Eberto Bautista, Inmate, LCC;
2. Renee Baker, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.
3. James Dzurenda, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.
4. Maribelle Henry, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.
5. Warden Nethanjah Brietenbach, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.
6. Harold Wickham, Former Deputy Director, c/o Douglas R. Rands, Office of the Attorney General, 100 N. Carson Street, Carson City, NV 89701-4717, (775) 684-1100.
7. Brian Williams, Deputy Director, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.
8. Chaplain NNCC, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.

9. Custodian(s) of Record for any exhibits identified above, c/o Douglas R. Rands, Office of the Attorney General, 100 N. Carson Street, Carson City, NV 89701-4717, and (775) 684-1100.

10. Any and all rebuttal witnesses that might be called to respond to claims made by either Plaintiff or any of his witnesses.

11. Any and all other witnesses that have personal knowledge supporting Defendant's statements of fact or law cited herein.

12. All witnesses identified by Plaintiff, whether or not called to testify at trial.

13. Yisroel Rosskamm, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N. Carson St. Carson City, Nevada 89701-4717.

Plaintiff and Defendant reserve the right to interpose objections to the calling of any named witness listed above prior to or at trial.

## IX. AVAILABLE TRIAL DATES

Plaintiff and Defendants' Counsel expressly understand that the Clerk shall set the trial of this matter at the convenience of the Court's calendar. A jury has been requested.

The following are three weeks in which both parties are available:

June 6, 2023

June 13, 2023

July 11, 2023

DATED this 12 day of January, 2023.

AARON D. FORD
Attorney General

Eberto Bautista,
*Plaintiff*

By: /s/ Douglas R. Rands
DOUGLAS R. RANDS, Bar No. 3572
Senior Deputy Attorney General

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that I am an employee of the Office of the Attorney General, State of Nevada and that on this _12th_ day of January 2023, I caused a copy of the foregoing, **(PROPOSED) JOINT PRETRIAL ORDER**, to be served, by U.S. District Court CM/ECF Electronic Filing on the following:

Eberto Bautista, #1044871
Lovelock Correctional Center
1200 Prison Road
Lovelock, NV 89419

/s/ Roberta W. Bibee
An employee of the
Office of the Attorney General